D. Maimon Kirschenbaum
Michael DiGiulio
JOSEPH & KIRSCHENBAUM LLP
32 Broadway, Suite 601
New York, NY 10004
(212) 688-5640
(212) 981-9587 (fax)

*Attorneys for Named Plaintiffs, proposed
FLSA Collective Plaintiffs, and proposed
Class*

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------x

| | |
|---|---|
| KRESHNIK HOTI and DESIART YMERAGA, on behalf of themselves and others similarly situated, | CASE NO. |
| Plaintiffs, | **COMPLAINT** |
| v. | **FLSA COLLECTIVE ACTION AND RULE 23 CLASS ACTION** |
| PATSY'S ITALIAN RESTAURANT INC., d/b/a PATSY'S ITALIAN RESTAURANT, SAL SCOGNAMILLO, JOSEPH SCOGNAMILLO, LISA SCOGNAMILLO; | **DEMAND FOR JURY TRIAL** |
| Defendants. | |

-----------------------------------------------------x

Plaintiffs, on behalf of themselves and all others similarly situated, alleges as follows:

## INTRODUCTION

1. In its heyday, Patsy's Italian Restaurant may have been a favorite hangout for the legendary Frank Sinatra, but in its current form the Restaurant is just like any other over-priced Italian eatery in a City full of over-priced Italian eateries, with the exception that Patsy's Restaurant also underpays and steals from its own employees. Patsy's Italian Restaurant steals tips from its employees, illegally underpays them, and alters their time and pay records to cover it up. It appears

that Patsy's took Ol' Blue Eyes's advice, for they certainly "did it [their] way." Unfortunately, their "way" was illegal.

## JURISDICTION AND VENUE

2. This Court has original federal question jurisdiction under 28 U.S.C. § 1331 because this case is brought under the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* ("FLSA"). This Court has supplemental jurisdiction over the New York state law claims, as they are so related to the claims in this action within the Court's original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

3. Venue is proper in this District because Defendant conducts business in this District, and the acts and/or omissions giving rise to the claims herein alleged took place in this District.

## THE PARTIES

4. Defendant Patsy's Italian Restaurant Inc., ("Patsy's") is a New York corporation that owns and operates Patsy's Italian Restaurant (the "Restaurant") located at 236 W 56th Street, New York, New York 10019.

5. Defendant Patsy's has an annual gross volume of sales in excess of $500,000.

6. Defendant Sal Scognamillo is a co-owner of Patsy's and works as the head chef and a manager at the Restaurant. Defendant Sal Scognamillo has authority to hire, fire, and set the rate of pay and the terms of employment for Plaintiffs. For example, Defendant Sal Scognamillo directs and instructs all of the employees at the Restaurant, including Plaintiffs, in how to carry out their job duties. For example, Defendant Sal Scognamillo set Plaintiffs' schedules and was in charge of assigning Plaintiffs' work shifts. Defendant Sal Scognamillo is Plaintiffs' employer.

7. Defendant Joseph Scognamillo is a co-owner of Patsy's and works as the host and front of house manager at the Restaurant. Defendant Joseph Scognamillo is Defendant Sal Scognamillo's son. Defendant Joseph Scognamillo has authority to hire, fire, and set the rate of pay and the terms of employment for Plaintiffs. For example, Defendant Joseph Scognamillo fired many employees including servers named Lorik and Toni. Defendant Joseph Scognamillo is Plaintiffs' employer.

8. Defendant Lisa Scognamillo is a co-owner of Patsy's and works as the attorney and business for the Restaurant. Defendant Lisa Scognamillo is Defendant Sal Scognamillo's wife. Defendant Lisa Scognamillo has authority to hire, fire, set the rate of pay and the terms of employment for Plaintiffs. Defendant Lisa Scognamillo is in charge of payroll at the Restaurant and the nightly tip reports. Defendant Lisa Scognamillo owns the building in which the Restaurant is located. Defendant Lisa Scognamillo is Plaintiffs' employer.

9. Plaintiff Kreshnick Hoti has been employed by Defendants as a server from early 2017 through September 2024.

10. Plaintiff Desiart Ymeraga has been employed by Defendants as a server from 2018 through September 2024.

## FLSA COLLECTIVE ACTION ALLEGATIONS

11. Plaintiffs brings the First and Second Claims for Relief as a collective action pursuant to FLSA Section 16(b), 29 U.S.C. § 216(b), on behalf of all non-exempt service employees employed by Defendants on or after the date that is three years before the filing of the Original Complaint in this case as defined herein ("FLSA Collective Plaintiffs").

12. At all relevant times, Plaintiffs and the other FLSA Collective Plaintiffs are and have been similarly situated, have had substantially similar job requirements and pay provisions,

3

and are and have been subject to Defendants' decision, policy, plan and common policies, programs, practices, procedures, protocols, routines, and rules willfully failing and refusing to pay them proper overtime pay and requiring them to split tips with tip ineligible employees including the owners and managers of the Patsy's. The claims of Plaintiffs stated herein are essentially the same as those of the other FLSA Collective Plaintiffs.

13. The First and Second Claims for Relief are properly brought under and maintained as an opt-in collective action pursuant to § 16(b) of the FLSA, 29 U.S.C. 216(b). The FLSA Collective Plaintiffs are readily ascertainable. For purpose of notice and other purposes related to this action, their names and addresses are readily available from the Defendants. Notice can be provided to the FLSA Collective Plaintiffs via first class mail to the last address known to Defendants.

## **RULE 23 CLASS ALLEGATIONS – NEW YORK**

14. Plaintiffs brings the state law Claims for Relief pursuant to the Federal Rules of Civil Procedure ("F.R.C.P.") Rule 23, on behalf of all non-exempt service employees employed by Defendants on or after the date that is six years before the filing of the Original Complaint in this case as defined herein (the "Class Period").

15. All said persons, including Plaintiffs, are referred to herein as the "Class." The Class members are readily ascertainable. The number and identity of the Class members are determinable from the records of Defendants. The hours assigned and worked, the positions held, and the rates of pay for each Class member are also determinable from Defendant's records. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided by means permissible under said F.R.C.P. 23.

16. The proposed Class is so numerous that joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the court. Although the precise number of such persons is unknown, and the facts on which the calculation of that number are presently within the sole control of Defendants, upon information and belief, there are more than forty (40) members of the Class.

17. Plaintiffs' claims are typical of those claims which could be alleged by any member of the Class, and the relief sought is typical of the relief which would be sought by each member of the Class in separate actions. All the Class members were subject to the same corporate practices of Defendants, as alleged herein, of failing to pay minimum wage, overtime, and spread of hours compensation, of requiring Class members to split tips with tip ineligible employees, and of failing to provide adequate wage notices and statements. Defendant's corporate-wide policies and practices affected all Class members similarly, and Defendant benefited from the same type of unfair and/or wrongful acts as to each Class member. Plaintiffs and other Class members sustained similar losses, injuries and damages arising from the same unlawful policies, practices and procedures.

18. Plaintiffs are able to fairly and adequately protect the interests of the Class and has no interests antagonistic to the Class. Plaintiffs are represented by attorneys who are experienced and competent in both class action litigation and employment litigation and have previously represented plaintiffs in wage and hour cases.

19. A class action is superior to other available methods for the fair and efficient adjudication of the controversy – particularly in the context of wage and hour litigation where individual class members lack the financial resources to vigorously prosecute a lawsuit against corporate Defendants. Class action treatment will permit a large number of similarly situated

persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender. Because the losses, injuries and damages suffered by each of the individual Class members are small in the sense pertinent to a class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual Class members to redress the wrongs done to them. On the other hand, important public interests will be served by addressing the matter as a class action. The adjudication of individual litigation claims would result in a great expenditure of Court and public resources; however, treating the claims as a class action would result in a significant saving of these costs. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent and/or varying adjudications with respect to the individual members of the Class, establishing incompatible standards of conduct for Defendant and resulting in the impairment of class members' rights and the disposition of their interests through actions to which they were not parties. The issues in this action can be decided by means of common, class-wide proof. In addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

20. Upon information and belief, Defendants and other employers throughout the state violate the New York Labor Law. Current employees are often afraid to assert their rights out of fear of direct or indirect retaliation. Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment. Class actions provide class members who are not named in the complaint a degree of anonymity which allows for the vindication of their rights while eliminating or reducing these risks.

21. There are questions of law and fact common to the Class which predominate over any questions affecting only individual class members, including:

   a) Whether Defendants employed Plaintiff and the Class members within the meaning of the New York law.

   b) At what common rate, or rates subject to common methods of calculation, was and is Defendants required to pay Plaintiffs and the Class members for their work.

   c) What are and were the policies, practices, programs, procedures, protocols and plans of Defendants regarding the tip pool and tip allocations for Plaintiffs and the Class members.

   d) Whether Defendants paid Plaintiff and the Class members the state minimum wage for all hours worked.

   e) Whether Defendants properly compensated Plaintiff and Class members for overtime hours and spread of hours shifts.

   f) Whether Defendants provided Plaintiffs and the Class members with adequate wage notices and wage statements.

   g) What are and were the policies, practices, programs, procedures, protocols and plans of Defendants regarding the type and amount of labor Plaintiffs and the Class members were required to perform.

   h) Whether Defendants retained a portion of Class members' tips.

## FACTS

22. Plaintiffs' Consent to Sue forms are attached hereto in Exhibit A.

23. Defendants committed the following alleged acts knowingly, intentionally and willfully.

24. Defendants knew that nonpayment of minimum wage, overtime, and spread of hours compensation and misappropriation of tips, would economically injure Plaintiffs, FLSA Collective Plaintiffs, and the Class, and violated federal and state laws.

25. Plaintiffs worked as servers at Patsy's Italian Restaurant.

26. Defendants required Plaintiffs to pool their tips with all of the other tipped employees at the Restaurant.

27. Defendants brazenly steal tips from the Restaurant's tip pool and keep the proceeds themselves. Defendants accomplish this in many different ways.

28. Defendants have ultimate control over the pay and tip records at the Restaurant and manipulate these records to steal tips from their employees. From at least 2019 through early 2024, these records were handwritten. In early 2024, Defendants began using computer software that, among other things, tracked pay and tip records. Defendants used their control over these records to try to cover up their theft.

29. Defendants control the computer systems that keep track of the tips collected and tips distributed. Defendants use this system to manipulate the tip sheets and tip reports that they provide to Plaintiffs and the other servers. Defendants routinely and systemically diverted tips in this system from the tip pool into their own fund. Defendants did this as a matter of practice and policy. Defendants stole tips sporadically on any given night, as well as systemically, in certain instances, as described below.

30. For example, throughout the statutory period, Defendants would often run the tip report for any given night early, before all of the tables at the Restaurant had settled up. As a result,

the tip report that was shown to Plaintiffs and the other tipped employees, and which reflected the actual tips that were paid to the servers, did not include all of the tips that were earned that night. Defendants would run another tip report at the end of the night, which they did not share with Plaintiffs or the other tipped employees, which showed the true total of tips earned by the servers and Defendants would keep the difference between the two tip reports. Defendants only showed Plaintiffs and the other tipped employees an tip report that did not contain all of the tips for any given night 3-4 days after the shift in which they earned the tips, and forced Plaintiffs to sign the tip sheets, even though Defendants did not provide any information to Plaintiffs and the servers to verify the accuracy of the tips reports.

31. On other occasions Defendants would steal all of the tips generated by a single server named Jordan and then distribute the remaining tips among all of the tipped employees.

32. Specifically, Defendants altered the records in the computer system such that all of Jordan's tips would be diverted out of the tip pool, but Jordan would be tipped out of the remainder of the tip pool like any other server.

33. By way of another example, when a table wants to split a bill, Defendants require Plaintiffs and the other servers to bring a manager (i.e., one of the Individual Defendants) to the table to process the bill split. When this occurs, the manager processes the tip in the accounting system and assigns the tip out of the tip pool, such that the tip does not appear in the tip pool or in the tip reports. That is, Defendants steal all of the tips from large tables that split the bill on multiple credit cards.

34. Defendants' brazen theft was clear to Plaintiffs and the other servers because the tip amounts never added up. Often the only employees in the tip pool would be the servers, who split sections evenly, and the amount of tips that a server took in would approximately reflect the

9

amount they received from the tip pool, give or take an amount due to the variance in tipping for any given section. However, routinely, Plaintiffs and the other servers would receive $200-$300 less in tips than what they had contributed even though there were no other tipped employees in the pool other than servers and even though all of the servers conferred about the amount of tips that they had contributed to the tip pool.

35. Beginning in 2024, Plaintiffs began complaining to Defendants about their missing tips. Defendants never had an explanation for the missing tips. On a few occasions, Defendant Joseph Scognamillo admitted that the tips given to the servers were incorrect and that he would fix it, but he never did.

36. During the statutory period, Defendants paid all tipped employees, including Plaintiffs, the then-current New York's foodservice worker's minimum wage, which was less than the full NY Minimum Wage.

37. However, Defendants were not entitled to pay tipped employees the lower foodservice workers' minimum wage because Defendants failed to provide them with written notice that Defendants were taking a tip credit from the minimum wage.

38. Defendants were required to provide written notice of the tip credit at the beginning of Plaintiffs' and the other tipped employees' employment, but Defendants failed to do this.

39. Defendants were also required to provide written notice of the tip credit whenever the tip credit changed, which occurred periodically during the statutory period, but Defendants failed to do this.

40. In fact, Defendants never provided Plaintiffs or the Class members with wage notices, as required by NYLL § 195(1). As a result, Defendants' payment of the tip credit minimum wage was an underpayment.

41. In addition, during certain shifts Plaintiffs and other tipped employees were required to spend more than 20% of their time or 2 hours performing non-service work (i.e., side work).

42. For example, for the opening shift at the Restaurant, servers were required to arrive and begin work at 10:30am, which was an hour and a half before the Restaurant opens for service. During this time, the servers performed non-service side work such as setting up tables, cleaning, and prepping the kitchen. In addition, during shifts, Defendants would often pull servers off the floor to do work in the kitchen, such as preparing salads, desserts, or to-go orders. Servers who were pulled into the kitchen normally attended to this non-service work for 30-60 minutes.

43. Because Defendants required tipped employees to do more than 20% or 2 hours of side work during certain shifts, Defendants' payment of the tip credit minimum wage during those shifts was unlawful.

44. Defendants paid Plaintiffs for every hour reflected in the Restaurant's clock in and out timekeeping system. However, Plaintiffs worked many more hours than those reflected in the time records.

45. Defendants instructed Plaintiffs to alter their time records such that they would not exceed 30 hours in a week, even though Plaintiffs consistently worked over 40 hours in a week. Later, in 2023, Defendants instructed Plaintiff Hoti to clock in and out so that his time records reflected an alternation between 40 hours and 30 hours a week, to make it appear that Plaintiff Hoti's time records were not being fabricated.

46. Defendants instructed Plaintiffs to clock out during the middle of their shifts and then clock back in 3-4 hours later so that the time records reflected fewer hours than what Plaintiffs actually worked.

47. Defendants told Plaintiffs that if they did this, they would assign them more shifts, and if they did not do this, they would cut their shifts or fire them.

48. As a result, Plaintiffs were not paid the minimum wage (or any wage) for every hour that they worked, including overtime wages for weeks when they worked over 40 hours.

49. For example, from at least 2019 to 2024, Plaintiff Hoti has worked a consistent 6-day a week schedule. Plaintiff Hoti worked all double shifts. He would work 3-4 days doing the opening shift, arriving at 10:30am and working through close, leaving around 10:30pm, with a 40 minute to an hour break in the middle of the day. On the other 2-3 days, Plaintiff Hoti would arrive at noon and work to 10-10:30pm, with a 40 minute to an hour break. As such, Plaintiff Hoti routinely worked at least 60 hours per week even though he was paid less than 40 hours per week.

50. Similarly, from at least 2019 to 2024, Plaintiff Ymeraga normally worked 5-6 days a week. During the holiday seasons (October-December), Plaintiff Ymeraga worked all double shifts – from 12pm until 10:00pm-10:30pm, with a 45 minute to an hour break. Sometimes Plaintiff Ymeraga would not take a break because there was too much work to do. As such, during this time, Plaintiff Ymeraga worked between 45-65 hours per week even though he was paid much less than this amount.

51. Because Defendants required Plaintiffs to alter their time records such that they reflected less work than they actually worked, Defendants rarely paid Plaintiffs any overtime, and they failed to pay Plaintiffs for all the hours they worked.

52. In addition, in the few instances when Defendants actually paid Plaintiffs overtime, because Defendants inappropriately calculated Plaintiffs' rates as the foodservice workers' minimum wage, they inappropriately (and unlawfully) applied a tip credit to their overtime hours.

53. Defendants failed to pay Plaintiffs the spread of hours premium on days when Plaintiffs shifts started and ended more than 10 hours apart.

54. Defendants failed to provide wage statements to Plaintiffs that complied with NYLL § 195(3). Among other things, the wage statements provided by Defendants did not contain the actual hours that Plaintiffs worked.

55. Had Plaintiffs been given this legally required information, Plaintiffs would have been in a better position to advocate for their rights when they did complain to Defendants, and they would have complained sooner. Thus, Defendants' failure to provide Plaintiffs with lawful wage statements caused Plaintiffs to be underpaid.

56. In addition, because Defendants paid Plaintiffs for the amount of hours listed on their wage statements, rather than their (higher) number of hours actually worked, the failure to list Plaintiffs' actual hours worked on the wage statements caused the nonpayment of wages for some of Plaintiffs' hours worked.

57. Defendants knowingly committed the foregoing acts against the Plaintiffs, FLSA Collective members, and members of the Class.

**FIRST CLAIM FOR RELIEF**
**(FLSA Overtime Violations, 29 U.S.C. § 201, *et seq.***
**Brought by Plaintiffs on Behalf of Themselves and the FLSA Collective Plaintiffs**)

58. Plaintiffs, on behalf of themselves and other FLSA Collective Plaintiffs, reallege and incorporate by reference all previous paragraphs.

59. At all relevant times, Defendants have been, and continue to be, "employers" engaged in interstate "commerce" and/or in the production of "goods" for "commerce," within the meaning of FLSA, 29 U.S.C. § 203.

60. Throughout the statute of limitations period covered by these claims, Plaintiffs and the other FLSA Collective Plaintiffs worked in excess of forty (40) hours per workweek.

61. At all relevant times, Defendants operated under a decision, policy and plan, and under common policies, programs, practices, procedures, protocols, routines and rules of willfully failing and refusing to pay the Class members the appropriate overtime rate for work in excess of forty (40) hours per workweek, and willfully failing to keep records required by the FLSA even though the FLSA Collective Plaintiffs have been and are entitled to overtime.

62. At all relevant times, Defendants willfully, regularly and repeatedly failed to pay Plaintiffs and the FLSA Collective Plaintiffs at the required overtime rates for hours worked in excess of forty (40) hours per workweek.

63. Plaintiffs, on behalf of themselves and the FLSA Collective Plaintiffs, seek damages in the amount of their respective unpaid overtime compensation, liquidated (double) damages as provided by the FLSA for overtime violations, attorneys' fees and costs, post-judgment interest, and such other legal and equitable relief as this Court deems just and proper.

**SECOND CLAIM FOR RELIEF**
**(FLSA Illegal Deductions from Gratuities, 29 U.S.C. § 201, *et seq.***
**Brought by Plaintiffs on Behalf of Themselves and the FLSA Collective Plaintiffs)**

64. Plaintiffs, on behalf of themselves and other FLSA Collective Plaintiffs, reallege and incorporate by reference all previous paragraphs.

65. At all relevant times, Defendants have been, and continue to be, "employers" engaged in interstate "commerce" and/or in the production of "goods" for "commerce," within the meaning of FLSA, 29 U.S.C. § 203.

66. Throughout the statute of limitations period covered by these claims, Defendants knowingly retained/misappropriated gratuities belonging to Plaintiffs and the FLSA Collective Plaintiffs.

67. Plaintiffs, on behalf of themselves and the FLSA Collective Plaintiffs, seek damages in the amount of their respective unpaid gratuities, liquidated damages as provided by the FLSA, attorneys' fees and costs, post-judgment interest, and such other legal and equitable relief as this Court deems just and proper.

### THIRD CLAIM FOR RELIEF
**(New York State Minimum Wage Violations, N.Y. Lab. L. §§ 650 *et seq.*
Brought by Plaintiffs on Behalf of Themselves and the Class)**

68. Plaintiffs, on behalf of themselves and the Class members, reallege and incorporate by reference all preceding paragraphs as if they were set forth again herein.

69. Defendants knowingly paid Plaintiffs and the Class members less than the New York State minimum wage for every hour worked.

70. Defendants did not pay Plaintiff and the Class members the New York minimum wage for all hours worked.

71. As a result of Defendant' unlawful conduct, Plaintiffs and members of the Class are entitled to an award of damages, including liquidated damages, in amount to be determined at trial, pre- and post-judgment interest, costs and attorneys' fees, as provided by N.Y. Lab. Law § 663.

### FOURTH CLAIM FOR RELIEF
**(New York Overtime Violations,
N.Y. Lab. L. § 650 *et seq.*, N.Y. Comp. Codes R. & Regs. tit. 12, § 146-1.4
Brought by Plaintiffs on Behalf of Themselves and the Class)**

72. Plaintiffs, on behalf of themselves and the Class members, realleges and incorporates by reference all previous paragraphs.

73. It is unlawful under New York law for an employer to suffer or permit a non-exempt employee to work without paying proper overtime wages for all hours worked in excess of forty (40) hours in any workweek.

74. Throughout the Class Period, Defendants willfully, regularly and repeatedly failed to pay Plaintiffs and the Class members at the required overtime rate for hours worked in excess of forty (40) hours per workweek.

75. As a result of Defendants' willful and unlawful conduct, Plaintiffs and members of the Class are entitled to an award of damages, including liquidated damages, in amount to be determined at trial, pre- and post-judgment interest, costs and attorneys' fees, as provided by N.Y. Lab. Law § 663.

**FIFTH CLAIM FOR RELIEF**
**(Illegal Deductions from Gratuities, N.Y. Lab. L. § 196-d and 198-b)**
**(Brought By Plaintiffs on Behalf of Themselves and the FLSA Collective Members)**

76. Plaintiffs, on behalf of themselves and the Class members, reallege and incorporate by reference all previous paragraphs.

77. Throughout the statute of limitations period covered by these claims, Defendants knowingly and willfully retained/misappropriated gratuities belonging to Plaintiffs and the Class members.

78. Plaintiffs, on behalf of themselves and the Class members, seek damages in the amount of their respective unpaid gratuities, liquidated damages as provided by the NYLL, attorneys' fees and costs, post-judgment interest, and such other legal and equitable relief as this Court deems just and proper.

**SIXTH CLAIM FOR RELIEF**
**(New York Spread of Hours Provisions**
**N.Y. Comp. Code R. & Regs. tit. 12, § 146-1.6**
**Brought by Plaintiffs on Behalf of Themselves and the Class)**

16

79. Plaintiffs, on behalf of themselves and the Class members, reallege and incorporate by reference all previous paragraphs.

80. Plaintiffs and the Class members had workdays that lasted more than ten (10) hours.

81. Defendants willfully and intentionally failed to compensate Plaintiffs and the Class Members one hour's pay at the basic New York minimum hourly wage rate for all workdays that spanned more than ten (10) hours, as required by New York law.

82. As a result of Defendants' willful and unlawful conduct, Plaintiffs and members of the Class are entitled to an award of damages, including compensatory damages and liquidated damages, in an amount to be determined at trial, pre- and post-judgment interest, and costs and attorneys' fees.

## SEVENTH CLAIM FOR RELIEF
### (New York Wage Notice and Statement Requirements, N.Y. Lab. L. §§ 195, 198 Brought by Plaintiffs on Behalf of Themselves and the Class)

83. Plaintiffs, on behalf of themselves and the Class members, reallege and incorporate by reference all previous paragraphs.

84. Defendants did not provide Plaintiffs and the members of the Class with wage notices and statements that contained the required information under N.Y. Lab. Law § 195.

85. As a result of Defendants' unlawful conduct, Plaintiffs and members of the Class are entitled to an award of damages pursuant to N.Y. Lab. Law § 198, in an amount to be determined at trial, pre- and post-judgment interest, and costs and attorneys' fees.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves and the FLSA Collective Plaintiffs and members of the Class, prays for relief as follows:

A. Designation of this action as a collective action on behalf of the FLSA Collective Plaintiffs and prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to all similarly situated members of the FLSA opt-in class, apprising them of the pendency of this action, and permitting them to assert timely FLSA claims and state claims in this action by filing individual Consent to Sue forms pursuant to 29 U.S.C. § 216(b);

B. Designation of Plaintiffs as Representative of the FLSA Collective Plaintiffs;

C. Designation of this action as a class action pursuant to F.R.C.P. 23.

D. Designation of Plaintiffs as Representative of the Class.

E. An award of damages, according to proof, including liquidated damages, to be paid by Defendants;

F. Penalties available under applicable laws;

G. Costs of action incurred herein, including expert fees;

H. Attorneys' fees, including fees pursuant to 29 U.S.C. § 216, N.Y. Lab. L. § 663 and other applicable statutes;

I. Pre-judgment and post-judgment interest, as provided by law; and

J. Such other and further legal and equitable relief as this Court deems necessary, just and proper.

Dated: New York, New York
       September 16 , 2024

Respectfully submitted,

JOSEPH & KIRSCHENBAUM LLP

By: /s/*D. Maimon Kirschenbaum*
D. Maimon Kirschenbaum
Michael DiGiulio
32 Broadway, Suite 601
New York, NY 10004
Tel: (212) 688-5640
Fax: (212) 981-9587

*Attorneys for Named Plaintiff, proposed FLSA Collective Plaintiffs, and proposed Class*

## **DEMAND FOR JURY TRIAL**

Plaintiffs hereby demand a jury trial on all causes of action and claims with respect to which they have a right to jury trial.