UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------x
KRESHNIK HOTI and DESIART               CASE NO. 24-CV-6991
YMERAGA, on behalf of themselves and
others similarly situated,

                **Plaintiffs,**

    v.

PATSY'S ITALIAN RESTAURANT
INC., d/b/a PATSY'S ITALIAN
RESTAURANT, SAL SCOGNAMILLO,
JOSEPH SCOGNAMILLO, LISA
SCOGNAMILLO;

                **Defendants.**
-----------------------------------------------------x

## DECLARATION OF DESIART YMERAGA

I, Desiart Ymeraga, under penalty of perjury, pursuant to 28 U.S.C. § 1746, affirm that the following is true and correct:

1. I was employed by Defendants to work as a server at Patsy's Italian Restaurant. I submit this declaration based on personal knowledge unless indicated otherwise.

2. I worked for Defendants as a server at Patsy's Italian Restaurant ("Patsy's") located at 236 West 56th Street New York, New York 10019. I was employed at Patsy's from 2018 through September 2024.

3. I use the term "servers" to mean all the employees who Defendants paid pursuant to the tip credit, whose job duties included waiting tables, and who participated in the tip pool at Patsy's.

4. During my entire employment, Defendants paid me an hourly wage plus tips.

5. During my employment with Defendants, I often worked more than 40 hours a week.

6. Other servers, including Jordan Dunjac, Bardhi Ymeraga, John Hanovic, and Dalibor Zendel, also worked over 40 hours per week. I know that these individuals worked more than 40 hours some weeks because they often worked 6 days a week, including on weeks when they worked some double shifts. A regular shift lasted between 6-8 hours, and a double shift lasted between 10-12 hours. They also told me that they worked overtime.

7. Defendants often required me to work during times when I was not clocked in.

8. For example, in 2024, often times when I arrived at work, the POS system would not allow me to clock in. On those days, I was often unable to clock in an hour or more after I started working. As a result, I was not paid for all of the time that I worked on that shift. This occurred on weeks when I worked over 40 hours in a week.

9. I witnessed other servers, including Kreshnik Hoti and Jordan Dunjac, who were also prevented from clocking in at the beginning of their shifts.

10. In addition, from 2018-2024, Defendants often required me to work after I had clocked out of my shift. In these instances, I was required to spend between 15 minutes and an hour and a half working after I had already clocked out for the night.

11. From 2018-2024, I witnessed other servers, including Dalibor Zendel, Jordan Dunjac, Hanor Kusari, John Hanovic, Ilir Marevci, Bardhi Ymeraga, Secunda Pasys, Adriano Marinescu, Norlet Osmani, and Bozo Bosco, who were required to work after they had clocked out.

12. At other times during my employment, Defendants told me to clock out in the middle of my shift and continue working. During these times, Defendants often sent me to do

errands off site such as buying food or other supplies for the kitchen. After running errands for Defendants, I would clock back in and continue working.

13. In addition to me, Defendants told other servers, including Dalibor Zendel and Jordan Dunjac, to keep their clocked-in hours to a minimum and to work off the clock during their shifts. I witnessed servers, including Dalibor Zendel and Jordan Dunjac, clocking out in the middle of their shift and continuing to work and working off the clock for most of their shift and clocking only near the end of their shift.

14. Defendants maintained a tip pool that all servers were required to participate in. All tips generated on a shift were supposed to be combined and then distributed among all of the servers who worked that shift.

15. However, Defendants routinely stole tips from the tip pool. Defendants stole tips in multiple ways.

16. For example, Defendants often ran the daily tip report early, before all of the tables at the restaurant had settled up. As a result, the tip report that was given to me and the other servers did not include all of the tips that customers paid that night. Defendants would run another tip report later, after all of the checks had closed, which they did not share with me or the other servers, and the Defendants would retain the difference between the two tip reports.

17. On other occasions, Defendants would withhold all of the tips generated by the server Jordan from the tip pool and only distribute to employees the tips generated by the other servers.

18. I know that Defendants stole tips on these occasions because the tips never added up. The only employees in the tip pool were servers, and the servers were each assigned approximately the same number of tables. I often spoke with other serves about the amount of tips

3

they contributed to the tip pool, and there wasn't normally a big difference between the total nightly tips generated by each server. Routinely, other servers in the tip pool and I would receive $200-$300 less than what we contributed to the tip pool even though there were no other tipped employees in the pool besides the servers.

19. Defendants also stole tips by diverting tips from large tables out of the tip pool. Whenever a table wanted to use multiple credit cards to pay a bill, Defendants required me and other servers to bring a manager, which was always one of the Individual Defendants, to the table to process the bill split. When this occurred, Defendants would not include the tips from the bill split in the tip pool and would retain the tips for themselves.

20. I complained Defendants Sal Scognamillo, Joseph Scognamillo, and Lisa Scognamillo about tips that were missing, but the Defendants did not do anything to rectify the stolen tips.

Dated: 3/25/2025
_____

New York, New York

Signed by:
_____
6B1C223E721B41C...
Desiart Ymeraga