JOSEPH & KIRSCHENBAUM LLP
Attorneys at Law

| | |
|---|---|
| Charles Joseph | 32 Broadway, Suite 601 |
| D. Maimon Kirschenbaum | New York, NY 10004 |
| Denise Schulman | Tel: 212-688-5640 |
| Josef Nussbaum | Fax: 212-688-2548 |
| Lucas Buzzard | www.jk-llp.com |
| Leah Seliger | |
| Michael DiGiulio | |

August 15, 2025

**VIA ECF**

Honorable Henry J. Ricardo
Southern District of New York
500 Pearl Street, Room 21D
New York, NY 10007

        Re:    Hoti, et al. v. Patsy's Italiana Restaurant Inc., et al, Case Nos. 24-cv-6991– Plaintiffs' Discovery Letter

Dear Judge Ricardo:

We represent the Plaintiffs in the above captioned cases, and pursuant to this Court's Individual Rule II(B)(1), we submit this letter to raise an outstanding discovery issue with the Court and to request an order compelling Defendants to produce the relevant and responsive financial documents. The Court has currently scheduled a telephonic discovery conference for August 26, 2025 to address discovery issues raised by Defendants. For efficiency and conservation of judicial and litigation resources, Plaintiffs request that the Court address the discovery issues detailed herein at the August 26 conference.

## Background and Relevant Procedural History

Plaintiffs worked as servers at Defendants' restaurant. Relevant here, Plaintiffs allege, in a collective and class action, that Defendants violated the Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL") by, among other things, misappropriating tips. Initially, Plaintiffs requested all documents related to the tips collected by Defendants. As the Court is aware, after numerous discovery disputes and delays, Defendants produced sample tip and sales records. Plaintiffs alleged in their complaint, and continue to maintain, that the tip and sales records provided to Plaintiffs during their employment, did not reflect all of the sales and tips paid to the Restaurant on any given night.

During the relevant time period, Defendants used two different credit card systems to process credit card sales and tips. From 2018-April 2024, Defendants used Heartland Payment Systems[1]

---

[1] Heartland Payment Systems is now a subsidiary of Global Payments Inc.

1

("Heartland Time Period") and from April 2024-September 2024, Defendants used Square ("Square Time Period"). Defendants produced sample records related to both time periods. For the Heartland Time Period, Defendants produced sample daily batch settlement summaries from the Heartland System. Plaintiffs contend that these sample batch settlement summaries do not account for all of the credit card sales and tips processed during the sample periods. For the Square Time Period, Defendants produced a transaction log and daily/weekly sales and tip summaries. Again, Plaintiffs contend that these summaries do not account for all for the credit card sales and tips processed during this period.[2]

Plaintiffs contend that these records do not show the full amount of sales and tips because the total sales amounts in these records are significantly less than the amounts that Plaintiffs recall were made during these time periods and because the records themselves have irregularities and inconsistencies. For example, during the Square Time Period, Defendants' records show that from April 2024-September 2024, 24% of customers – i.e., a quarter of all customers – at the Restaurant left no tip. This defies common sense but comports with Plaintiffs' allegations that Defendants collected tips that were not distributed to Plaintiffs and were thus not included in the tip pool documents produced.

On August 11, Plaintiffs deposed Defendants' Federal Rule of Civil Procedure ("FRCP") 30(b)(6) witness, Defendant Lisa Scognamillo. At this deposition, Ms. Scognamillo testified that during the Heartland Time Period, Heartland reimbursed Defendants for the total amount of tips, sales, and taxes processed in any given night (minus the credit card fee) via direct deposit into Defendants' bank account within one business day. She testified that she has access to these bank records. Ms. Scognamillo also testified that it was possible for Defendants to run an additional batch settlement after the initial batch settlement was run, in order to add additional receipts that were not included in the first batch settlement on any given night.[3] That is, Defendants admit that there could be additional batch settlement reports for which Defendants were reimbursed.

At the deposition, Ms. Scognamillo further testified that during the Square Period, Square reimbursed Defendants for the total amount of tips, sales, and taxes processed (minus a credit card fee) via direct deposit into Defendants' bank account within 2 business days, and that Defendants have access to these bank records. Importantly, Plaintiffs confronted Ms. Scognamillo with Defendants' own daily transaction records that show that from April 2024-September 2024, 24% of customers – i.e., a quarter of all customers – at the Restaurant left no tip. While Defendants maintain that this is accurate,[4] both common sense and Plaintiffs allegations plainly suggest that these records are not a full accounting of the tips collected.

---

[2] Plaintiffs are in the process of serving subpoenas on Heartland and Square for records of sales and tip reimbursement transfers to Defendants' accounts.

[3] While Plaintiffs do not know the exact way in which Defendants manipulated the records, Plaintiffs have alleged that they believe Defendants ran a second batch settlement report later in the night that would have included additional sales and tips not included in the first batch settlement report, and Defendants would retain the tips not included in the first batch settlement report. Defendants admit that running a second batch settlement was possible.

[4] While Defendants also testified that some customers left cash tips on bills that were paid with credit cards, Ms. Scognamillo testified that she had no records of these tips and had no idea how much cash tips were left at the Restaurant. Plaintiffs maintain that almost all customers left tips and that very few customers left cash tips on bills that were paid with credit cards.

Thereafter, at the deposition and then again on August 12, Plaintiffs requested that Defendants produce bank transaction records showing Defendants' reimbursements from Heartland and Square to verify the sales and tip records produced in this litigation. To limit Defendants' burden, Plaintiffs offered to limit the request to an extremely reasonable sampling consisting of only 5 weeks' (out of six years) worth of bank records.[5] Plaintiffs requested that these records be produced in full, with no redactions, in order to ensure any additional transactions from Heartland or Square were not omitted. Plaintiffs offered to accept these records with the designation of "Confidential Attorneys' Eyes Only." Defendants rejected Plaintiffs proposal and have refused to produce any bank records.

On May 13, the parties met and conferred, during which Defendants maintained their position that they would not produce bank records but offered to produce screen shots from the Square website showing, what Defendants contend are, the transactions from Square. As Plaintiffs cannot confirm that these screenshots represent all transactions into Plaintiffs' accounts during the time period and are not relevant whatsoever to the Heartland Time Period, Defendants' offered compromise is insufficient for the purposes for which Plaintiffs seek the bank records. Plaintiffs then notified Defendants that they would bring this issue to the Court. Plaintiffs now request that the Court order Defendants to produce the sample bank records.[6]

### **The Bank Records Are Relevant and The Sampling Request is Reasonably Limited**

Under FRCP 26, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." This rule instructs courts to consider "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." "The party seeking discovery bears the initial burden of proving the discovery is relevant." *Citizens Union of City of New York v. Att'y Gen. Of New York*, 269 F. Supp. 3d 124, 139 (S.D.N.Y. 2107). "Once relevance has been shown, it is up to the responding party to justify curtailing discovery." *Fireman's Fund Ins. Co. v. Great Am. Ins. Co. of N.Y.*, 284 F.R.D. 132, 135 (2012).

Here, there is no dispute that these records are relevant to Plaintiffs' claims of tip misappropriation as they directly show what Defendants were actually paid in tips and sales on nights that Plaintiffs worked. This information is central to Plaintiffs' claims. Plaintiffs have been consistent throughout this litigation in alleging that Defendants had manipulated the tip records throughout their employment, and these bank records are necessary to determining the veracity of Defendants' tip records. As described above, there are discrepancies in the tip records for which Defendnats have no reasonable explanation, and Defendants admit that they had the ability to run additional batch settlements such that it is possible that the tip records given to Plaintiffs and produced in this litigation are not accurate. As such, Plaintiffs' request is not a fishing expedition as it is tied to

---

[5] Plaintiffs requested that Defendants produce bank records for the following time periods: August 1-7, 2024; July 1-7, 2024; August 22-28, 2023; April 1-7, 2022; December 8-14, 2019.
[6] Should these bank records reveal discrepancies between the sales and tips received by Defendants in their accounts and those reflected in the sales and tip records previously produced, Plaintiffs reserve the right to request further sampling for purposes of both liability and damages.

Plaintiffs' original allegations and supported by other documents produced thus far and Defendants' testimony. The bank records requested are plainly and centrally relevant to Plaintiffs' misappropriation of tips claim.

There is no justification for limiting this discovery. Because Defendants testified that they have access to these records, and the sampling period is only for 5 weeks, there is very limited burden and expense in producing the records. Defendants have a reduced privacy interest in these records, as Defendants themselves contend that the records will confirm the financial information already produced in the sales and tip records. Further, because of Plaintiffs' offer for Defendants to mark these records as "Confidential For Attorneys' Eyes Only" the risk of harm from the disclosure of incidental financial information on these records is greatly reduced. That is, Plaintiffs' benefit from obtaining these records to prove their claims is enormous compared to the burden or expense for Defendants in producing these documents.

For the reasons stated herein, Plaintiffs respectfully request that the Court order Defendants to produce the sample bank records. As noted above, Plaintiffs request that the Court take up Plaintiffs' request at the telephonic discovery conference currently scheduled for August 26. We thank the Court for its careful consideration of this matter.

Respectfully submitted,

JOSEPH & KIRSCHENBAUM, LLP

/s/ Michael DiGiulio
Michael DiGiulio
32 Broadway, Suite 601
New York, NY 10004

*Attorneys for Plaintiffs, the proposed Collective and Class*