# FRANKLIN, GRINGER & COHEN, P.C.

| | | |
|---|---|---|
| Glenn J. Franklin | ATTORNEYS AT LAW | Ken Sutak |
| Martin Gringer | | <u>of counsel</u> |
| Steven Elliot Cohen | 666 OLD COUNTRY ROAD, SUITE 202 | |
| Michael S. Mosscrop | GARDEN CITY, NEW YORK 11530-2013 | |
| <u>Jasmine Y. Patel</u>* | TELEPHONE (516) 228-3131.  FAX (516) 228-3136 | |
| Danielle Mietus | | |
| *ADMITTED TO NY AND NJ | | |

August 20, 2025

<u>Via ECF</u>
The Honorable Henry J. Ricardo, U.S.M.J.
United States District Court
Southern District of New York
500 Pearl Street
New York, New York 10007

      Re:    <u>Hoti et al. v. Patsy's Italian Restaurant, et al.</u> 24 Civ. 6991 (JGLC)(HJR)
            <u>Hoti et al. v. Patsy's Italian Restaurant, et al.</u> 24 Civ. 6999 (JGLC)(HJR)

Dear Judge Ricardo:

      This firm represents Defendants Patsy's Italian Restaurant, Sal Scognamillo, Joseph Scognamillo and Lisa Scognamillo (together the "Defendants") in the two (2) above referenced matters.  The Defendants respectfully submit this response to Plaintiffs' discovery letter, filed August 15, 2025.  Plaintiffs' request should be denied because the request is harassing, duplicative and redundant.  Further, bank records have no probative value when unalterable transaction records have been produced.

**<u>Background</u>**

      Patsy's Italian Restaurant is a family owned business that up until April 2024, servers would take orders on handwritten paper order sheets.  Credit card transactions were processed on a small credit card terminal that produced paper records of all "batched" credit card transactions.  Heartland managed credit card processing and payment.  In April 2024, Defendants adopted a digital POS ("Point of Sales") system that processed credit card transactions.  Square, the POS system, is widely used in the industry and maintains a digital record.  Records for both Square and Heartland cannot be altered.

      Plaintiffs request bank records on the purely naked and absurd assertion that Defendants processed separate, undocumented credit card transactions for the sole and absurd purpose of misappropriating tips.  In other words, Plaintiffs allege that Defendants engaged in a highly sophisticated financial fraud scheme by hacking Heartland and Square POS systems to pay Defendants' credit card tips without a transaction record.  Defendants are not sufficiently computer savvy to hack the financial records of credit card processing companies to hide tips from its employees.

Plaintiffs disingenuously bemoan discovery issues knowing that discovery is likely to be completed a year after the filing of the complaint for two highly contentious lawsuits. This includes Plaintiffs' submission of several opt-in notices, filing of a motion for conditional certification of a collective, and pre-discovery mediation. Plaintiffs have received thousands of pages of documents including daily time clocks, paystubs, tip records, and credit card transaction records. Their application is designed to prolong the inevitable conclusion that they lacked any basis to allege misappropriation of tips when the records reliably reflect a lawful tip pool.

In pursuing this motion, Plaintiffs tacitly admit that all the financial details in Defendants' production demonstrate that these records demonstrate that all tips have been accounted for and paid to Plaintiffs and other tip eligible employees. Plaintiffs cannot point to one single document that demonstrates missing or incomplete records or the existence of missing or unrecorded credit card transactions. Instead, they rely on the bald and bizarre allegation that credit card companies paid Defendants more than what the transaction records demonstrate.

Further, Plaintiffs make a deliberately false and misleading claim that a quarter of transactions between April 2024 through September 2024 or approximately 1652 transactions have $0 in tips. As preliminary matter, Plaintiffs' reference to $0 tip transactions does not have any correlation to bank records. A record with $0 tips means no tips were claimed for credit card processing. Consequently, Defendants did not receive payment of tips for those transactions by the credit card processor.

Nonetheless, Plaintiffs deliberately fails to disclose that:

(1) 535 of $0 tip transactions were voided checks, complimentary meals, accidental/canceled charges, or refunds. Accordingly, these records reflect Defendants charged $0 or less in net sales in addition to $0 in tips.
(2) 151 transactions record service charge payments in lieu of discretionary tips. Defendants records demonstrate that service charge payments were included in the tip pool;
(3) 239 transactions that were paid in part or whole by cash where a cash tip payment would likely occur; and
(4) 142 gift card transactions occurred where tips could not be charged to the gift card.

A total of 588 credit card only transactions were processed with $0 in tips and $1 or more in gross sales. This accounts for 8.8% of all transactions at Patsy's where customers likely paid tips in cash and sales on credit card only. A sample of these records is annexed as Exhibit A.

The Heartland and Square records are the definitive source of credit card tip transactions – not bank records. Heartland credit card transactions are recorded on printed batch receipts with individual batch numbers. The batch receipts are sequential to verify that no other transaction could be made outside of the printed receipts. A sample of these records is annexed as Exhibit B. Square processes all credit card payments at the close of the business day and no later than 36 hours after a customer check is opened. Information on closing procedures for Square POS is annexed hereto as Exhibit C. Once processed, the record cannot be changed because those records are maintained by Square not Defendants. Instead of a batch receipt, Square summarizes

transactions through its computer dashboard.  Any summaries between two dates in a range include all transactions recorded between those two dates.

**Argument**

Rule 26(b)(2)(C)(i) of the Federal rules of Civil Procedure states "the court <u>must</u> limit the frequency or extent of discovery … if it determines that: … the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive." (emphasis added).  Here, bank records offer no probative value when batch settlement receipts and POS transaction reports are definitive of credit card tip transactions.  Bank records also offer less value because it does not specify how much in credit card tips were transferred to Defendants.

This Court in <u>Bhatt v. Lalit Patel Physician P.C.</u> denied bank statements because it would not verify wage paid or hours worked when the plaintiff's tax returns were sufficient to demonstrate wages paid.  <u>Bhatt v. Lalit Patel Physician P.C.</u>, 2023 WL 2895935, at *2 (E.D.N.Y. 2023) (explaining "it is not at all clear why unredacted bank statements would demonstrate wages paid or hours worked").  Here, Plaintiffs admits that they "do not know the exact way in which Defendants manipulated [tip] records".  They simply claim "they believe Defendants ran a second batch settlement report that would have included additional sales and tips."  This issue concern whether Defendants produced all batch settlement reports.  Bank statements can not reasonably disclose whether a batch report was not produced in discovery.  This is bald speculation especially when they have received all transaction records from April 2024 through September 2024, as well as all batch settlement receipts for the relevant sampling period.

Despite this, Plaintiffs have explained how a second batch settlement report could be produced without a record of its existence.  The pre-April 2024 batch settlement reports each have their own unique receipt number in sequential order.  Plaintiff has not identified one instance where the report numbers skip or are out of sequence.  For post-April 2024, Square POS does not permit alteration of any of their records.  Defendants provided transaction records and summary reports for a closed time period - April 2024 through September 2024.  The summary report includes all transactions during that time period.  The figures in the summary report and the individual transaction reports, along with tip records all match.  Plaintiff does not show how Square POS could in fact be manipulated to exclude any transactions during the closed time period on any summary report.

**Conclusion**

For all the reasons stated above, Defendants respectfully request that the Court deny Plaintiffs' request for bank records.

Respectfully submitted,

**FRANKLIN, GRINGER & COHEN, P.C.**

__/s/_____
Michael D. Yim

Cc:   All Counsel of Record (*via* ECF)