USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: ______________
DATE FILED: 10/27/2025

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

KRESHNIK HOTI, *et al.*,

Plaintiffs,

-v-

PATSY'S ITALIAN RESTAURANT, *et al.*,

Defendants.

**OPINION AND ORDER**

24-CV-6991 (JGLC) (HJR)

**HENRY J. RICARDO, United States Magistrate Judge.**

Plaintiffs Kreshnik Hoti and Desiart Ymeraga (collectively, "Plaintiffs"), former servers at Patsy's Italian Restaurant ("Patsy's"), brought this action alleging violations of the Fair Labor Standards Act ("FLSA"), the New York Labor Law ("NYLL"), and their implementing regulations. *See* First Amended Complaint, ECF No. 11 ("FAC") ¶¶ 9–10, 58–85.

Now before the Court is Plaintiffs' Memorandum of Law in Support of Motion for Conditional Certification of FLSA Collective, ECF No. 56 (the "Motion"). Plaintiffs seek an order: (1) conditionally certifying an FLSA collective consisting of servers employed by Patsy's on or after September 17, 2021; (2) requiring the production of information identifying potential opt-in plaintiffs; and (3) approving Plaintiffs' proposed notices and plan of notice. Motion at 1.[1] For the reasons set forth below, Plaintiffs' Motion is **GRANTED** in part and **DENIED** in part.

[1] Page numbers referenced when citing to the Parties' filings are the original page numbers, not those appearing in the ECF stamped header.

## I. BACKGROUND

### A. Plaintiffs' Claims

Plaintiff Hoti worked as a server at Patsy's from 2017 through September 2024. Declaration of Kreshnik Hoti, dated March 25, 2025, ECF No. 54 ("Hoti Decl.") ¶ 2. Plaintiff Ymeraga worked as a server at Patsy's from 2018 through September 2024. Declaration of Desiart Ymeraga, dated March 25, 2025, ECF No. 55 ("Ymeraga Decl.") ¶ 2. Defendants Sal, Joseph and Lisa Scognamillo (collectively with Patsy's, "Defendants") are co-owners of Patsy's. FAC ¶¶ 6–8.

Plaintiffs allege that Defendants violated FLSA requirements regarding payment for overtime work. Ymeraga Decl. ¶¶ 5–13; Hoti Decl. ¶¶ 5–13. Under the FLSA, employers must pay employees not less than one and one-half times the regular rate for hours worked in excess of forty hours per week. 29 U.S.C. § 207(a)(1). Plaintiffs assert that they often worked more than forty hours a week, but were routinely paid for less time and did not receive overtime payments due to Defendants' manipulation of time records. Ymeraga Decl. ¶ 5; Hoti Decl. ¶ 5; FAC ¶¶ 49–51. Specifically, Plaintiffs claim that Defendants made them and other servers alter their time records to reflect fewer hours, including by: (1) instructing servers to clock out during their shifts and to clock back in hours later; (2) requiring servers to work after clocking out; and (3) maintaining a Point of Sale ("POS") system that did not allow servers to clock in until an hour or more after starting work. Ymeraga Decl. ¶¶ 7–13; Hoti Decl. ¶¶ 7–13; FAC ¶¶ 45–51.

Plaintiffs also complain that Defendants misappropriated tips. FAC ¶ 66. While tip pooling is permissible, "[a]n employer may not keep tips received by its employees for any purposes, including allowing managers or supervisors to keep any portion of employees' tips." 29 U.S.C. § 203(m)(2)(B). Plaintiffs claim that Defendants diverted tips from a mandatory tip pool in several ways, including by: (1) running one daily tip report before all tables had settled and a second report after the checks had closed, retaining the difference between the two tip reports; (2) retaining tips generated by a specific server while distributing to employees only those tips generated by the remaining servers; and (3) requiring a manager to process split bills and then diverting tips from large tables. Ymeraga Decl. ¶¶ 14–19; Hoti Decl. ¶¶ 14–21; FAC ¶¶ 29–33.

In addition to these alleged FLSA violations, Plaintiffs claim that Defendants violated various provisions of the NYLL. *See* FAC ¶¶ 68–85. However, Plaintiffs' Motion only pertains to their FLSA claims for unpaid overtime and misappropriation of tips, such that the NYLL claims are not detailed here. *See* Motion at 1.

**B. Procedural Background**

Plaintiffs initiated this action on September 16, 2024, *see* ECF No. 1, and filed an Amended Complaint on September 23, 2024. ECF No. 11. On April 11, 2025, Plaintiffs filed their motion for collective certification, ECF No. 52. Defendants filed an opposition memorandum on July 2, 2025, ECF No. 66 ("Opp.").

On July 18, 2025, Plaintiffs filed their reply memorandum, ECF No. 76 ("Reply"). Fact discovery is currently scheduled to close on November 14, 2025, and expert discovery will close on March 1, 2026. ECF Nos. 82, 86.

## II.   DISCUSSION

### A.   Legal Standards

The FLSA provides that "any one or more employees" may bring an action against an employer "for and in behalf of himself or themselves and other employees similarly situated." 29 U.S.C. § 216(b). An "employer" under the FLSA is "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d). Unlike a class action brought under Rule 23 of the Federal Rules of Civil Procedure, a collective action requires "similarly situated" employees to affirmatively opt-in to the litigation by filing written consents. 29 U.S.C. § 216(b). "Although they are not required to do so by FLSA, district courts 'have discretion, in appropriate cases, to implement [§ 216(b)] . . . by facilitating notice to potential plaintiffs' of the pendency of the action and of their opportunity to opt-in as represented plaintiffs." *Myers v. Hertz Corp.*, 624 F.3d 537, 554 (2d Cir. 2010) (quoting *Hoffman-La Roche Inc. v. Sperling*, 493 U.S. 165, 169 (1989)).

#### 1.   "Modest Factual Showing" Standard

Courts in this Circuit generally apply a "sensible" two-step method in analyzing a potential FLSA collective. *Myers*, 624 F.3d at 554–55. In the first step, commonly referred to as conditional certification, the named plaintiffs must make a

"'modest factual showing' that they and potential opt-in plaintiffs 'together were victims of a common policy or plan that violated the law,'" at which point the trial court may send (or direct plaintiffs' counsel to send) a notice to potential opt-in plaintiffs. *Id.* at 555 (quoting *Hoffmann v. Sbarro, Inc.*, 982 F. Supp. 249, 261 (S.D.N.Y. 1997)). At the second stage, which usually occurs after discovery is completed, the court determines whether the opt-in plaintiffs are in fact "similarly situated" to the named plaintiffs. *Id.* If not, the Court may de-certify the collective and dismiss the opt-in plaintiffs' claims without prejudice. *Id.*

Because the objective at the conditional certification stage is "merely to determine *whether* 'similarly situated' plaintiffs do in fact exist," a plaintiff has a lower burden of proof. *Id.* (emphasis in original) (quoting *Sbarro*, 982 F. Supp. at 261). At this initial stage, the court examines the "plaintiffs' 'own pleadings, affidavits, declarations, or the affidavits and declarations of other potential class members'" to determine whether the named plaintiffs and putative class members are similarly situated. *Trinidad v. Pret A Manger (USA) Ltd.*, 962 F. Supp. 2d 545, 557–58 (S.D.N.Y. 2013) (quoting *Hamadou v. Hess Corp.*, 915 F. Supp. 2d 651, 661 (S.D.N.Y. 2013)). Yet, a "modest factual showing cannot be satisfied simply by unsupported assertions," or by an affidavit or declaration made on "information or belief." *McGlone v. Cont. Callers, Inc.*, 867 F. Supp. 2d 438, 443–44 (S.D.N.Y. 2012) (cleaned up). More evidence—such as the plaintiffs' "personal knowledge" of the facts—is required. *Id.* at 444.

Moreover, to infer the "common policy" required for conditional certification, plaintiffs must demonstrate a "factual nexus" between their situation and those of other similarly situated employees. *Sbarro*, 982 F. Supp. at 261–62. A showing that plaintiffs were "subjected to certain wage and hour practices at the defendants' workplace and to the best of their knowledge, and on the basis of their observations, their experience was shared by members of the proposed [collective]" is a sufficient basis from which to infer a "common policy." *Cortes v. New Creators, Inc.*, No. 15-CV-5680 (PAE), 2015 WL 7076009, at *3 (S.D.N.Y. Nov. 12, 2015) (quoting *Iglesias-Mendoza v. La Belle Farm, Inc.*, 239 F.R.D. 363, 368 (S.D.N.Y. 2007)).

Consistent with the minimal burden of proof typically required at the conditional certification stage, the court "should not weigh the merits of the underlying claims in determining whether potential opt-in plaintiffs may be similarly situated" and should not "resolve factual disputes . . . or make credibility determinations." *Lynch v. United Servs. Auto. Ass'n*, 491 F. Supp. 2d 357, 368 (S.D.N.Y. 2007) (citations omitted). Accordingly, where there is a conflict between the parties as to the facts underlying the plaintiffs' wage and hour claims, the court should treat the plaintiffs' attestations as true. *See Cortes*, 2015 WL 7076009, at *1 n.1.

**2. Conditional Certification "Modest Plus" Standard**

Where discovery pertaining to conditional certification has been completed, or substantially completed, some courts in this Circuit have opted to apply a "modest

plus" standard. *See, e.g., Korenblum v. Citigroup, Inc.*, 195 F. Supp. 3d 475, 480–82 (S.D.N.Y. 2016); *Brown v. Barnes & Noble, Inc.*, No. 16-CV-7333 (RA), 2019 WL 5188941, at *2 (S.D.N.Y. Oct. 15, 2019). This standard has been described as "the exception rather than the rule." *Reid v. A-Plus Care HHC Inc.*, No. 23-CV-1163 (JPC) (SDA), 2025 WL 1703066, at *3 (S.D.N.Y. June 18, 2025) (citing *Franze v. Bimbo Foods Bakeries Distrib., LLC*, No. 17-CV-3556 (NSR), 2019 WL 1417125, at *3 (S.D.N.Y. Mar. 29, 2019)). When applying the modest plus standard, the court will look beyond plaintiffs' pleadings and affidavits and consider "the evidence submitted by both parties, albeit with an understanding 'that the body of evidence is necessarily incomplete.'" *Korenblum*, 195 F. Supp. 3d at 482 (quoting *Creely v. HCR ManorCare, Inc.*, 789 F. Supp. 2d 819, 826 (N.D. Ohio 2011)). Even under the modest plus standard, the Court will not decide the merits of the case at the conditional certification stage. *Id.*

Defendants argue that the Court should apply the modest plus standard "because all necessary evidence has been disclosed to conclusively determine whether other servers were denied tips." Opp. at 3. In support of their argument, Defendants primarily rely on *Korenblum*, *Barnes & Noble*, and *Stewart v. Hudson Hall LLC*, No. 20-CV-885 (PGG) (SLC), 2021 WL 1750368 (S.D.N.Y. May 4, 2021). Opp. at 11–12. These cases are inapposite as in each case—unlike here—discovery pertaining to conditional certification was already complete. *See Korenblum*, 195 F. Supp. 3d at 481–82; *Barnes & Noble*, 2019 WL 5188941, at *2; *Stewart*, 2021 WL

1750368, at * 7. Notably in *Stewart* the parties "coalesce[d]" on the application of the modest plus standard as discovery regarding collective certification was complete. 2021 WL 1750368, at * 7. Additionally, in *Barnes & Noble*, when the court decided the conditional certification motion, fourteen depositions had taken place and tens of thousands of pages of documents had been produced. 2019 WL 5188941, at *2.

In contrast, since Plaintiffs filed the Motion on April 11, 2025, discovery has been extended several times and, as of the date of this Opinion and Order, fact discovery is scheduled to close on November 14, 2025, and expert discovery will close on March 1, 2026. *See* ECF Nos. 60, 82, 86. Therefore, the Court will apply the "modest factual showing" standard instead of the "modest plus" standard.[2]

**B. Defining the Collective**

Plaintiffs seek conditional certification of a collective of servers employed at Patsy's on or after September 17, 2021. Motion at 1. In support of the Motion, Plaintiffs submitted declarations attesting that they were not adequately compensated for the hours they worked, and that Defendants misappropriated funds from a tip pool. Ymeraga Decl. ¶¶ 5, 7–8, 10, 12, 14–19; Hoti Decl. ¶¶ 5, 7–8, 10, 12, 14–17, 20–21. In addition to describing their own experiences, Plaintiffs claim, based on observations and conversations with coworkers, that other servers

[2] Even if the Court were to apply the "modest plus" standard, it is far from clear that the documents attached to the Declaration of Michael Yim, dated July 2, 2025, ECF No. 68 ("Yim Decl."), defeat Plaintiffs' allegations. Defendants do not provide specific page references when citing to their exhibits, at least one of which is comprised of over one hundred pages. *See, e.g.,* Opp. at 10; Yim Decl. Ex. A, ECF No. 68-1.

were subjected to the same practices. Ymeraga Decl. ¶¶ 6, 9, 11, 13–19; Hoti Decl. ¶¶ 6, 9, 11, 13, 14–21.

Defendants oppose conditional certification for four reasons. First, Defendants argue that Plaintiffs failed to allege minimal facts to demonstrate that other servers worked unpaid overtime hours. Opp. at 12. Second, Defendants contend that Plaintiffs failed to demonstrate that other employees' tips were misappropriated. *Id*. at 15. Third, Defendants assert that documentary evidence overwhelmingly demonstrates that no other employees lost tips. *Id*. at 18. And fourth, Defendants assert that equitable factors preclude Plaintiffs from seeking conditional certification. *Id*. at 23.

There is a consensus in this District that plaintiffs relying on observations of coworkers or conversations with them to assert a common unlawful policy must provide a minimum level of detail regarding the contents of those observations or conversations. *Munoz v. Grp. US Mgmt. LLC*, 348 F.R.D. 192, 203 (S.D.N.Y. 2025) (citing *Racey v. Jay-Jay Cabaret, Inc.*, No. 15-CV-8228 (KPF), 2016 WL 3020933, at *4 (S.D.N.Y. May 23, 2016)). These details might include other employees' job positions, hours worked, pay rates, and method of pay. *See, e.g.*, *Pequero v. Montafon, LLC*, No. 18-CV-12187 (DF), 2020 WL 4016756, at *10 (S.D.N.Y. July 15, 2020). Courts in this District have denied conditional certification based on affidavits and declarations lacking in detail. *See Yang v. Asia Mkt. Corp.*, No. 17-CV-6886 (VEC), 2018 WL 2227607, at *2 (S.D.N.Y. Apr. 3, 2018) (concluding

affidavit failing to provide detail regarding plaintiff's conversations with coworkers about defendants' compensation practices was insufficient to support conditional certification of collective). However, plaintiffs need not provide "the times and dates" of conversations so long as a court "can fairly infer" that other employees "labored under similar working conditions and thus suffered the same violations of the FLSA." *Munoz*, 348 F.R.D. at 203 (cleaned up); *see also Garcia v. Spectrum of Creations Inc.*, 102 F. Supp. 3d 541, 549 (S.D.N.Y. 2015) ("While it would be helpful to have the time and dates of conversations, it is not surprising that plaintiffs would be unable to recall such specifics.").

**1. FLSA Overtime Claim**

Plaintiffs have satisfied their minimal burden of demonstrating that they and potential collective members were subjected to a common policy of not properly compensating servers for overtime work. Although Plaintiffs do not provide dates, they recall witnessing specific servers who were prevented from clocking in at the beginning of their shifts, were required to work after clocking out, were told to keep clocked-in hours to a minimum, and clocked out in the middle of their shifts while continuing to work, then clocking back in near the end of their shifts. Hoti Decl. ¶¶ 9, 11, 13; Ymeraga Decl. ¶¶ 9, 11, 13. Plaintiffs further assert that they know specific servers worked over forty hours per week because those workers told Plaintiffs that they worked overtime. Hoti Decl. ¶ 6; Ymeraga Decl. ¶ 6. While these declarations are somewhat conclusory, they are sufficient to satisfy the

modest burden required at this stage. *See Hernandez v. Bare Burger Dio Inc.*, No. 12-CV-7794 (RWS), 2013 WL 3199292, at *3 (S.D.N.Y. June 25, 2013) (granting conditional certification based on plaintiff's declaration confirming that he and other employees were paid less than the statutory minimum wage and did not receive overtime pay); *see also Cheng Chung Liang v. J.C. Broadway Rest., Inc.*, No. 12-CV-1054, 2013 WL 2284882, at *1 (S.D.N.Y. May 23, 2013) (granting conditional certification based on plaintiff's affidavit explaining he knew coworkers were improperly paid based on discussions with coworkers comparing pay).

Defendants argue that Plaintiffs failed to provide sufficient detail to demonstrate that putative class members were subjected to a common policy in which they were not adequately compensated for overtime work. Opp. at 12–15. Citing *Reyes Cruz v. 70-30 Austin St. Bakery Inc.*, No. 18-CV-7408 (PAE) (HBP), 2019 WL 1929910, at *5 (S.D.N.Y. May 1, 2019), Defendants argue that "vague assertion[s] that other employees regularly worked in excess of 40 hours without overtime premium pay [are] insufficient." Opp. at 14–15. In *Reyes Cruz*, however, the plaintiff failed to demonstrate a factual nexus between the named plaintiff and the potential opt-in plaintiffs. *See* 2019 WL 1929910, at *5. In contrast, Plaintiffs here provide such a factual nexus by identifying particular practices said to prevent all servers from accurately recording their time—thereby ensuring they would not accrue overtime pay—and identifying by name other servers they observed being subjected to these same practices. Hoti Decl. ¶¶ 9, 11, 13; Ymeraga Decl. ¶¶ 9, 11,

13. These assertions, which are more robust than those made in *Reyes Cruz*, are sufficient to make a modest showing that other servers did not receive adequate overtime payments as their overtime work was not properly recorded.

Defendants' reliance on *Hernandez v. NHR Hum. Res., LLC*, No. 20-CV-3109 (PGG) (DF), 2021 WL 2535534 (S.D.N.Y. June 18, 2021) is similarly unpersuasive. In *Hernandez* the plaintiff, who held the position of "super/porter/handyman," sought to include in the proposed collective workers who held various positions, including porters, handymen, and maintenance workers. 2021 WL 2535534, at *12. The court noted that plaintiff failed to show that other porters or handymen were subjected to similar policies, particularly given it was not obvious that a porter would be subject to the same policies as a superintendent. *Id.* at *12–13. Notably, *Hernandez* concluded that plaintiff *did* meet his burden of showing that other superintendents were similarly situated. *Id.* at *10–11. Here, Plaintiffs' proposed collective would include only servers at Patsy's, not employees with different job descriptions. Motion at 1. Thus, Plaintiffs' observations regarding other servers are sufficient for the Court to infer that other servers were similarly situated and subject to the same alleged practices as Plaintiffs.

Finally, Defendants point to Plaintiffs' "incredible accusation that Defendants implemented and maintained a compliant wage and hour record keeping system only for the purpose of generating falsified records . . . ." Opp. at 13. This is an argument regarding the *merits* of Plaintiffs' claims because it disputes

whether Defendants in fact engaged in the practices that are alleged. As explained above, the Court will not "resolve factual disputes . . . or make credibility determinations" in deciding this Motion. *Lynch*, 491 F. Supp. 2d at 368. Therefore, Defendants' arguments are unavailing at this stage, and Plaintiffs have met their burden for conditional certification of a collective regarding their overtime payment claim.

**2. FLSA Tip Pool Claim**

Plaintiffs have also met the minimal burden of showing a common policy or practice regarding misappropriation of tips. Plaintiffs seek to represent a collective of servers at Patsy's. Motion at 1. In their declarations, Plaintiffs define "servers" as "all the employees who Defendants paid pursuant to the tip credit, whose job duties included waiting tables, and who participated in the tip pool at Patsy's." Hoti Decl. ¶ 3; Ymeraga Decl. ¶ 3. Plaintiffs also explain that "all servers were required to participate in" the tip pool. Hoti Decl. ¶ 14; Ymeraga Decl. ¶ 14.

As was explained in another case involving claims of misappropriation from a tip pool, "Plaintiffs' proposed collective is similarly situated by definition, since all tipped employees were required to participate in the pool. And because any distribution from the pool affects all participants, the members of the collective must have been subject to a common policy or practice . . . ." *Uddin v. O'Brien Rest. Holding Co., LLC*, No. 16-CV-2098 (RJS), 2016 WL 11779533, at *3 (S.D.N.Y. Nov. 22, 2016). To support their claims, Plaintiffs claim they spoke with other servers

about the amount of tips they contributed to the tip pool, and servers would routinely receive less than what they contributed. Hoti Decl. ¶ 20; Ymeraga Decl. ¶ 18. Defendants do not dispute the existence of a tip pool and acknowledge that "[a] tip pool violation occurs when an employer keeps 'tips received by its employees.'" Opp. at 15 (quoting 29 U.S.C. § 203(m)(2)(B)). Therefore, as Plaintiffs' allegations regarding tip misappropriation suffice to show, for purposes of conditional certification, that other servers were subjected to a common policy or practice, Plaintiffs have satisfied their burden at this stage.

Defendants cite *Zheng v. Good Fortune Supermarket Grp. (USA), Inc.*, No. 13-CV-60 (ILG), 2013 WL 5132023, at *5 (E.D.N.Y. Sept. 12, 2013) to argue that "Plaintiffs do not provide essential evidence to minimally articulate a 'common policy' to deprive other employee[s] of their tips." Opp. at 16. In *Zheng*, plaintiff relied only on her own declaration and did not identify other employees "nor explain[] the basis for her observations." 2013 WL 5132023, at *5–6. Here, both Plaintiffs submitted declarations detailing their observations regarding Defendants' alleged misuse of the tip pool and both Plaintiffs explained that all servers participated in the tip pool. Hoti Decl. ¶¶ 14–21; Ymeraga Decl. ¶¶ 14–19.

Defendants further argue that Plaintiffs "fail to provide any meaningful detail into the mechanisms of the tip pool to infer misappropriation is plausible." Opp. at 15. To support its position, Defendants submitted a sampling of discovery documents, including wage and hour records, a credit card report, tip pool

calculations, and excerpts from websites. Yim Decl. ¶¶ 1–7. As addressed above, the Court declines to apply the "modest plus" standard, and cannot determine the merits of Plaintiffs' claims at the conditional certification stage. Defendants' arguments against conditional certification for Plaintiffs' tip misappropriation claim are therefore unpersuasive.

**3. Equitable Considerations**

Finally, Defendants ask the Court to use its discretion to deny conditional certification because this case is "highly unusual" and is "a dispute between competing business[es] with a complicated history of family conflict over the control of the Patsy's brand and legacy." Opp. at 23. Defendants cite no authority for denying conditional certification on this basis. *Id.* at 23–25. Even assuming that Plaintiffs are pawns in a larger family conflict, that would not justify the FLSA violations alleged here. Defendants' final argument is not persuasive.

**C. Production of Potential Opt-In Plaintiff Information**

Plaintiffs request production of an Excel spreadsheet "of the names, last known addresses, last known phone numbers, last known e-mail addresses, dates of employment, and position(s) held" for potential opt-in plaintiffs. Motion at 11. Plaintiffs do not provide further details regarding which individuals should be included in the spreadsheet, but the Court will construe this request to apply to individuals Plaintiffs seek to include in the collective, meaning "servers employed at [Patsy's] on or after September 17, 2021." Motion at 1. Aside from opposing

conditional certification generally, Defendants do not have a specific objection to production of this information.

"Courts within this Circuit routinely grant plaintiffs' motions to compel production of the names and addresses of potentially similarly situated employees who may wish to 'opt-in' to a collective action." *Anglada v. Linens 'N Things, Inc.*, No. 06-CV-12901 (CM) (LMS), 2007 WL 1552511, at *7 (S.D.N.Y. Apr. 26, 2007) (collecting cases), *report and recommendation adopted* May 22, 2007. Additionally, "[c]ourts routinely order discovery of . . . telephone numbers in FLSA actions." *Diatta v. Iguana New York Ltd.*, No. 15-CV-6399 (AT), 2016 WL 2865132, at *6 (S.D.N.Y. May 10, 2016) (collecting cases). Courts also commonly require employers to disclose the potential collective members' hourly rates. *See, e.g., Hernandez v. NGM Mgmt. Grp. LLC*, No. 12-CV-7795 RWS, 2013 WL 5303766, at *5 (S.D.N.Y. Sept. 20, 2013) (ordering defendants to produce "a computer-readable list of the names, addresses, compensation rates, telephone numbers, and dates of employment for all" potential opt-in plaintiffs). Therefore, Defendants must provide a list (in Excel format if possible) including the names, last known addresses, last known phone numbers, last known e-mail addresses, dates of employment, and position(s) held for servers employed at Patsy's on or after September 17, 2021.

**D. Content and Distribution of the Notice**

"At the conditional certification stage, the district court monitors both the drafting and the distribution of the Notice of Pendency to ensure timeliness and

correctness, and courts have 'broad discretion' over the details of the Notice." *Garcia Ramos v. DNC Food Serv. Corp.*, No. 19-CV-2967 (VSB), 2020 WL 2832776, at *8 (S.D.N.Y. June 1, 2020) (quoting *Gjurovich v. Emmanuel's Marketplace, Inc.*, 282 F. Supp. 2d 101, 106 (S.D.N.Y. 2003)). Potential opt-in plaintiffs must receive "accurate and timely notice concerning the pendency of the collective action, so that [they] can make informed decisions about whether to participate." *Whitehorn v. Wolfgang's Steakhouse, Inc.*, 767 F. Supp. 2d 445, 450 (S.D.N.Y. 2011) (quoting *Fasanelli v. Heartland Brewery, Inc.*, 516 F. Supp. 2d 317, 323 (S.D.N.Y. 2007)). The FLSA collective notice should generally contain:

> a description of some or all of the following: (1) the purpose of the notice; (2) the nature of the lawsuit filed and the relief being sought; (3) the proposed class composition; (4) the legal effect of joining the lawsuit; (5) the fact that the court has not taken any position regarding the merits of the lawsuit; (6) how to join the lawsuit; (7) the purely voluntary nature of the decision and the legal effect of not joining the lawsuit; (8) the prohibition against retaliation; and (9) the relevant contact information for any inquiries.

*Salomon v. Adderley Indus., Inc.*, 847 F. Supp. 2d 561, 566 (S.D.N.Y. 2012) (quotations omitted). Additionally, courts in this District have held that the notice should advise potential opt-in plaintiffs that as participants in a lawsuit, they may be required to provide information, be deposed, or testify in court. *Id.* at 567.

Plaintiffs' proposed notice, ECF No. 53-1 (the "Notice"), contains all the required content. The Notice describes its purpose, as well as the nature of the lawsuit, and the relief sought. *See* Notice at 1–2. The Notice also includes a description of the proposed class, outlines the effect of joining the lawsuit, includes

a statement that the Court has not made a determination regarding the validity of Plaintiffs' claims, gives instructions on how to join the lawsuit, explains that joining the lawsuit is voluntary and the legal effect of not joining the lawsuit, notes the prohibition against retaliation, and offers contact information for Plaintiffs' attorneys. *See* Notice at 1–3. Thus, the Notice is approved, subject to the revisions described below.

Defendants request that the Proposed Notice be amended to: (1) have consent notices sent to the Clerk of Court; and (2) provide Defendants' counsel's contact information. Opp. at 26. The Court will not require that notices be sent to the Clerk of Court, but directs Plaintiffs to include Defendants' counsel's contact information in the Notice. Although courts in this District are divided on this issue, requiring opt-in plaintiffs to send their consent forms to the Clerk of Court would burden the Court. *See Benavides v. Serenity Spa NY Inc.*, 166 F. Supp. 3d 474, 486 (S.D.N.Y. 2016) ("as long as the notice makes explicit that opt-in plaintiffs can retain their own counsel if they choose . . . it is acceptable and less cumbersome to have opt-in notices sent directly to plaintiff's counsel."); *see also Hossain v. Let's Eat, LLC*, No. 24-CV-4078 (JAV), 2025 WL 1718095, at *7 (S.D.N.Y. June 18, 2025) ("the majority of courts in this District direct potential opt-in plaintiffs to mail their consent forms to Plaintiffs' counsel.") (citing *Vilella v. Pup Culture LLC*, No. 23-CV-2291 (LJL), 2023 WL 7986562, at *11 (S.D.N.Y. Nov. 17, 2023)). Plaintiffs' counsel

must file any forms they receive on the ECF docket within twenty-four hours of receipt. *See Vilella*, 2023 WL 7986562, at *11 (ordering same).

While not unanimously, courts in this Circuit have concluded that it is appropriate to include the contact information of defendants' counsel in the notice. *Benavides*, 166 F. Supp. 3d at 486–87. Plaintiffs shall therefore add contact information for Defendants' attorneys. The Notice shall also advise opt-in plaintiffs that if they decide to join this case (whether through Joseph & Kirschenbaum LLP or other counsel) they should not contact Defendants' lawyers and must instead rely on their attorney to do so. *See id.* at 487 (ordering same).

Plaintiffs also request that the Court approve dissemination of a shortened notice by text message. Motion at 10; *see* ECF No. 53-2. Although Defendants do not object to notice by text message, Defendants assert that the proposed text notice is misleading and that the word "claim" should be replaced with "that alleges." Opp. at 26. Courts in the Second Circuit have permitted dissemination of notice by text message "where . . . the nature of the employer's business facilitated a high turnover rate among employees." *Vasto v. Credico (USA) LLC*, No. 15-CV-9298 (PAE), 2016 WL 2658172, at *16 (S.D.N.Y. May 5, 2016) (citing *Martin v. Sprint/United Mgmt. Co.*, No. 15-CV-5237 (PAE), 2016 WL 30334, at *19 (S.D.N.Y. Jan. 4, 2016)). Plaintiffs may disseminate the text message notice, but Plaintiffs shall replace the word "claiming" with the words "that alleges" to avoid any confusion over the certainty of the claims. Plaintiffs' counsel shall not contact any

potential opt-in plaintiff more than twice during the 60-day opt-in period via any one channel of communication. *See Munoz*, 348 F.R.D. at 208 (ordering same), *reconsideration denied*, No. 22-CV-4038 (MKV) (HJR), 2025 WL 615132 (S.D.N.Y. Feb. 11, 2025).

## III. CONCLUSION

For the foregoing reasons, Plaintiffs' motion for conditional certification is **GRANTED** in part and **DENIED** in part. No later than **November 10, 2025**:

1. Defendants shall produce a spreadsheet, in Excel format if possible, containing the names, last known addresses, last known phone numbers, last known e-mail addresses, dates of employment, and position(s) held for potential opt-in plaintiffs; and
2. The parties shall, after meeting and conferring, prepare and submit to the Court for its approval a revised Notice, revised text message notice, and a proposed distribution order, incorporating the Court's rulings.

**SO ORDERED.**

Dated: October 27, 2025
New York, New York

Henry J. Ricardo
United States Magistrate Judge